UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

March 25, 2014

LETTER TO COUNSEL:

RE:   *Charles Cowman v. Carolyn W. Colvin, Acting Commissioner of Social Security;*
      Civil No. TJS-11-1814

Dear Counsel:

  On July 1, 2011, the Plaintiff, Charles Francis Cowman, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (ECF No. 1). The parties have filed cross-motions for summary judgment. (ECF Nos. 22 & 26). These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF Nos. 2 & 6). I find that no hearing is necessary. *See* Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Acting Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

  The Plaintiff, Charles Francis Cowman ("Mr. Cowman") filed his application for DIB and SSI on August 20, 2008. (Tr. 157-168). Mr. Cowman claimed alleged disability beginning on August 11, 2008. (Tr. 19). The claim was denied initially on December 16, 2008 and on reconsideration on July 2, 2009. (Tr. 86-90, 96-99). A hearing was held before an Administrative Law Judge ("ALJ") on June 30, 2010. (Tr. 30-81). On September 23, 2010, the ALJ determined that Mr. Cowman was not disabled under the Social Security Act as he retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (Tr. 28). On May 6, 2011, the Appeals Council denied Mr. Cowman's request for review (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

  The ALJ evaluated Mr. Cowman's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Mr. Cowman was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since August 11, 2008. (Tr. 21). At step two, the ALJ found that Mr. Cowman suffered from the severe impairments of bipolar disorder, major depressive disorder, polysubstance dependence, and lumbar disc herniation. (Tr. 21). At step three, the ALJ found that Mr. Cowman's impairments, separately and in combination, failed to meet or equal in

1

severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings") (Tr. 22-24). The ALJ determined that Mr. Cowman has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) however, occasional climbing, balancing, stooping, kneeling, crouching, crawling; occasional to frequent grasping and fine manipulation; no reaching above shoulder level; must avoid hazards including heights and moving machinery; requires low stress jobs as no production rate pace, little change in work setting; can tolerate occasional interaction with supervisors, co-workers and the public; will experience[] occasional lapses in ability to maintain attention and concentration.

(Tr. 24).

At step four, the ALJ determined that Mr. Cowman is unable to perform any past relevant work.[1] (Tr. 27). At step five, the ALJ found that given Mr. Cowman's age, education, work experience, and RFC, and based on the testimony of the vocational expert, there were jobs that existed in significant numbers in the national economy that he could perform, including "mail sorter," "sedentary order clerk," and "document preparer." (Tr. 28). Therefore, the ALJ found that Mr. Cowman was not disabled under the Social Security Act. (Tr. 29).

Mr. Cowman presents three arguments on appeal: (1) that the ALJ failed to properly evaluate his mental impairments at step three of the sequential evaluation process; (2) that the ALJ failed to afford proper weight to the opinion of Mr. Cowman's treating physician; and (3) that the ALJ erred in making credibility determinations. I will address each of these arguments in turn.

The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). Where there is factual support that a listing could be met, the ALJ must analyze whether the claimant's impairment meets or equals the listing. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison to symptoms to Listing criteria is only triggered if there is ample evidence of the record to support a determination that the claimant's impairment meets or equals one of the listings." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D. Md. 1999). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

---

[1] The ALJ also stated that "the claimant is able to perform her past work," but this appears to be a typographical error. (Tr. 27). This statement is inconsistent with the vocational expert's testimony that Mr. Cowman is unable to perform past relevant work (Tr. 74-75), the ALJ's finding (in bold text) that "[t]he claimant is unable to perform any past relevant work" (Tr. 27), and the fact that the ALJ went on to analyze Mr. Cowman's claim at step five of the sequential evaluation process. *Id*.

2

Mr. Cowman argues that the ALJ erred at step three of the sequential evaluation process by failing to consider Listing 12.04 ("Affective disorders"), and instead considered Listing 12.05 ("Intellectual disability"). Although Mr. Cowman bears the burden to prove that he meets Listing 12.04, it is telling that he does not explain why he meets each requirement of this listing, with reference to evidence in the record. Instead, his argument is essentially that the ALJ's analysis with respect to Listing 12.04 is so flawed that this Court is unable to review it. This argument has no merit. The analysis set forth by the ALJ in her opinion necessarily forecloses a finding that Mr. Cowman meets the requirements of Listing 12.04. A claimant can meet this listing in two ways. First, a claimant may prove that he meets all of the Listing 12.04(A) criteria, which criteria also result in

> at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(B). Second, a claimant may prove that he meets the requirements set forth in Listing 12.04(C). As to the first method of proving that he meets this listing, Mr. Cowman's argument fails because Listing 12.04 has the same "B criteria" as Listing 12.05's "D criteria," which the ALJ expressly considered. *See Bloom v. Astrue*, No. SKG–08–0827, 2009 WL 2449877, at *19 n.18 (D. Md. Aug. 7, 2009) (determining that a finding that the claimant failed to meet listing 12.04 was "tantamount to a finding that [claimant] did not meet Listing 12.02."). The ALJ found that Mr. Cowman failed to meet the "B criteria" of any of the 12.00 listings (or the "D criteria of the 12.05 listing) because he does not have a marked limitation in any of the three "B" domains. Because the "B criteria" must be met, the ALJ's analysis forecloses a finding that Mr. Cowman met both Part A and Part B of Listing 12.04. The ALJ's finding that Mr. Cowman did not meet Part C of Listing 12.04 is also supported by substantial evidence, as Mr. Cowman has not experienced "[r]epeated episodes of decompensation, each of extended duration," "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(C).

Next, Mr. Cowman argues that the ALJ failed to apply the "special technique" as required under 20 C.F.R. §§ 404.1520a, 416.920a. Specifically, Mr. Cowman states that the ALJ did not follow the second step, the rating of each of the four functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). However, the ALJ cited Dr. Dale's evaluation of Mr. Cowman as to each of the four functional areas. (Tr. 23). "Dr. Dale opined that in activities of daily living, the claimant has mild restriction; in social functioning, the claimant has moderate difficulties; and with regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced one or two episodes of decompensation, each of extended duration." (Tr. 23).

Although the ALJ did not explicitly identify the weight she assigned to Dr. Dale's evaluation, the weight can be inferred from the subsequent paragraph in the ALJ's decision. "However, because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria . . . are not satisfied." (Tr. 23). That the ALJ's application of the test for "paragraph B" criteria directly follows her citation of Dr. Dale's evaluation demonstrates a strong connection between the two, and forms the logical bridge that is necessary to permit this Court's review. The ALJ implicitly adopted Dr. Dale's evaluation and used it as the basis for the ratings of the four functional areas. Reading the ALJ's decision as a whole, the implicit assignment of weigh to Dr. Dale's evaluation of the ratings of the four functional areas satisfies the requirements of 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

Mr. Cowman also argues that the ALJ failed to mention "important material evidence" in determining whether or not Mr. Cowman's mental health impairments met a listing. (ECF No. 21-1 at 22). An ALJ has a "duty to hear all relevant evidence in order to determine whether an applicant is entitled to receive" disability benefits. *Arnold v. Secretary of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977). Mr. Cowman specifically argues that the ALJ failed to consider several pieces of evidence, including his own testimony that he was diagnosed with bipolar disorder at age 16 and that his depression had recently worsened, the results of Dr. Klein's examination on November 17, 2008, and treatment notes from Granite House showing a diagnosis of major depression and two GAF[2] scores of 50.

The ALJ noted that Mr. Cowman was diagnosed with bipolar disorder in 1980. (Tr. 23). The ALJ also noted an activity of daily living questionnaire dated June 16, 2009 that indicated a worsening of anxiety and depression, and a note from Dr. Dale that identified treatment notes from Granite House dated March 2009 where Mr. Cowman reported, "I guess I'm depressed or bipolar." (Tr. 23). The ALJ made significant references to Dr. Dale's evaluation dated June 29, 2009, which analyzed Mr. Cowman's mental health impairments in relation to the four functional areas under the Part B criteria of Listing 12.04. (Tr. 23). The Social Security Administration "has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5, 2005 WL 1317040 (11th Cir. June 2, 2005) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). The ALJ was not required to cite every piece of evidence in the record. *See Melgarejo v. Astrue*, No. JKS-08-3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009). Mr. Cowman's argument that the ALJ failed to consider "important material evidence" has no merit. The Court finds that the ALJ's determination that Mr. Cowman's mental health impairments did not meet a listing is supported by substantial evidence.

---

[2] The Global Assessment of Functioning ("GAF") scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. *Johnson v. Astrue,* No. TMD-10-947, 2011 WL 5149574 at *2 (D. Md. Oct. 27, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed.). A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009).

Mr. Cowman next contends that the ALJ "failed to afford proper weight to the opinion of [Mr. Cowman's] treating physician for pain management, Dr. Howard Hoffberg." (ECF No. 22-1 at 26). The opinion of a treating physician is entitled to controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590; see also 20 C.F.R. §§ 404.1527(c), 416.927(c). The regulations require an ALJ to assess a number of factors when considering what weight to assign to the medical opinions presented. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include: (1) the examining relationship between the physician and the claimant; (2) the treatment relationship between the physician and the claimant; (3) the extent to which a medical opinion is supported by relevant evidence; (4) the consistency of a medical opinion with the record as a whole; and, (5) whether the physician's opinion relates to an area in which they are a specialist. *Id*. While treating source opinions on issues reserved to the Commissioner, such as determining a claimant's RFC, are not entitled to controlling weight, the ALJ must still evaluate all of the evidence in the case record to determine the extent to which the physician's opinion is supported by the record as a whole. *Id*.

While the ALJ must generally give more weight to a treating physician's opinion, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Specifically, an ALJ may attribute little weight to a treating source opinion when it is unsupported, inconsistent with other evidence in the record, or based on a short term treating relationship. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence[.]") The ALJ is also not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183. Pursuant to 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii), the ALJ is required to "explain in the decision the weight given to . . . any opinions from treating sources, nonteaching sources, and other non-examining sources who do not work for [the Social Security Administration]."

In this case, the ALJ appropriately considered Dr. Hoffberg's opinion. Mr. Cowman argues that it was improper for the ALJ to reject Dr. Hoffberg's opinions without also providing "persuasive contradictory evidence to support [the ALJ's] conclusion." (Tr. 26). Mr. Cowman contends that the ALJ's rejection of the opinions was improper because of the ALJ's mischaracterization of Dr. Hoffberg's reports. (Tr. 26). Mr. Cowman is correct that the ALJ misstated Dr. Hoffberg's opinion. Dr. Hoffberg stated that Mr. Cowman could only stand or walk for a total of less than two hours in a workday (Tr. 518, 612), but the ALJ misstated the opinion as permitting Mr. Cowman to stand or walk for no more than two hours in a workday. (Tr. 26). Nonetheless, because the ALJ discounted Dr. Hoffberg's opinion as overly restrictive, this misstatement is harmless. The Court finds that the ALJ accorded appropriate weight to Dr. Hoffberg's opinions and that the ALJ's determination that the opinions should be discounted is supported by substantial evidence. The ALJ concluded that Dr. Hoffberg's opinion was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence of record, including treatment records from the same group." (Tr. 26). Dr. Hoffberg's opinions as to Mr. Cowman's extreme limitations are not

supported by his own treatment notes, where he noted that Mr. Cowman reported "staying active," which is wholly inconsistent with his complaints about being "unable to do anything." (Tr. 26).

Finally, Mr. Cowman contends that it was improper for the ALJ to find that Mr. Cowman's subjective complaints were not credible based on her personal observations of his conduct at the hearing. The ALJ noted that "although [Mr. Cowman] appeared to have very muscular arms, he asserted he could lift nothing with either arm." (Tr. 25). The ALJ continued, "To demonstrate, [Mr. Cowman] attempted to lift the water pitcher with his right hand, which he alleged was his stronger hand. His hand wobbled and he could barely lift the pitcher." (Tr. 25). However, the ALJ later observed Mr. Cowman "moving both hands freely, [lifting] himself from his chair using both arms, and resting his head in both hands." (Tr. 25). The ALJ noted that, despite Mr. Cowman's testimony of excruciating back pain, Mr. Cowman was "casually sitting in his chair with his legs crossed, a posture wholly inconsistent with excruciating back pain." (Tr. 25).

Mr. Cowman cites *Jenkins v. Sullivan*, 906 F.2d 107 (4th Cir. 1990) in support of his argument that the Fourth Circuit has rejected credibility determinations based on the ALJ's observations of the claimant at the hearing. This case does not address whether an ALJ may base a credibility determination on personal observations. Presumably, Mr. Cowman intended to rely on *Jenkins v. Bowen*, 819 F.2d 1138 (table), 1987 WL 37525 (4th Cir. May 18, 1987), where the court held that an ALJ "erred by engaging in sit and squirm jurisprudence." The Commissioner amended the regulations on credibility findings in 1991 to allow for an ALJ to consider "observations by our employees and other persons." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "The adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p (S.S.A.), 1996 WL 374186. Nonetheless, an ALJ may not evaluate a claimant's credibility based solely on her personal observations, but "should consider any personal observations in the overall evaluation of the credibility of the individual's statements" in addition to all of the other evidence in the record. *Id*.

The ALJ adequately explained her adverse credibility determination, which she based on observations made at the hearing in light of medical records that were inconsistent with Mr. Cowman's statements. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("[w]e will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence"). Mr. Cowman stated at the hearing that he never had a drug or alcohol abuse problem, had never been in treatment for a drug or alcohol problem, and that no one had ever suggested he had a drug or alcohol problem. (Tr. 48-49). When the ALJ pointed Mr. Cowman to evidence in the record that contradicted these statements, Mr. Cowman admitted that he had previously experienced drug and alcohol problems, including drinking twelve beers at a time, blacking out, experiencing withdrawal tremors, being charged with driving while impaired on two occasions, attended court-ordered substance abuse counseling, and abusing marijuana, Quaaludes, barbiturates and valium. (Tr. 53). The ALJ also noted that Mr. Cowman's assertions that he needed assistance feeding himself contradicted a prior function report where Mr. Cowman noted that he prepared meals, helped with the laundry, and occasionally shopped. (Tr. 25). These inconsistencies in Mr. Cowman's

statements, along with the ALJ's consideration of Mr. Cowman's medically determinable impairments, appropriately weighed into the ALJ's assessment of Mr. Cowman's credibility. The ALJ did not base her adverse credibility determination solely on Mr. Cowman's conduct at the hearing. Instead, the ALJ properly considered Mr. Cowman's statements and conduct in light of the medical evidence of the record, and properly found that Mr. Cowman was not credible. This finding is supported by substantial evidence, and Mr. Cowman's argument to the contrary must be rejected. For this reason, Mr. Cowman's third argument fails.

For the reasons set forth herein, Mr. Cowman's Motion for Summary Judgment (ECF No. 22) will be DENIED, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 26) will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/
Timothy J. Sullivan
United States Magistrate Judge